WILLIAM E. CLAIRMONT AND PATRICIA A. CLAIRMONT, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6937-73.    Filed September 30, 1975.

*Garry A. Pearson,* for the petitioners.
*Rick K. Budd,* for the respondent.

FEATHERSTON, *Judge:* Respondent determined the following deficiencies in the Federal income taxes of petitioners William E. Clairmont and Patricia A. Clairmont:

| Taxable year | Deficiency | Taxable year | Deficiency |
|---|---|---|---|
| 1967 | $23,850.00 | 1969 | $3,689.00 |
| 1968 | 40,657.00 | 1970 | 46,931.65 |
| | | | 115,127.65 |

Certain other issues having been resolved by the parties, the remaining issue to be decided is whether petitioners' method of computing deductions for depreciation on assets which were used in a seasonal construction business complies with the require-

ments of section 167.[1]

FINDINGS OF FACT

Petitioners William E. Clairmont (hereinafter petitioner) and Patricia A. Clairmont, husband and wife, were legal residents of Bismarck, N. Dak., at the time they filed their petition. Their joint Federal income tax returns for 1967 through 1970 were filed with the District Director of Internal Revenue at Fargo, N. Dak., or with the Midwest Service Center, Kansas City, Mo. Petitioners used the cash receipts and disbursements, calendar year method of accounting.

At all relevant times, petitioner owned all of the stock of William Clairmont, Inc. (hereinafter Clairmont), an electing small business corporation pursuant to section 1372, organized under the laws of North Dakota.

Clairmont was engaged in the construction business and was principally involved in earthmoving and the building of highways, dams, and canals. Clairmont was the largest earthmoving company in North Dakota, and its business required it to maintain substantial investments in heavy construction equipment. Clairmont's equipment included bulldozers, earthmovers, scrapers, draglines, and other large pieces of machinery. In addition to the heavy equipment, Clairmont maintained several trucks, automobiles, and an airplane for the use of salaried employees working on the various construction projects.

Clairmont's activities were restricted mainly to North Dakota, Minnesota, Montana, South Dakota, and Nebraska. Due to the extremely harsh winters in these States, Clairmont's major construction projects were limited to the milder spring and summer months. Clairmont's payroll records for 1968 through 1974 show the following approximate beginning and ending dates of the construction season:[2]

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.

[2] The payroll records for 1967 had been discarded; therefore, no exact beginning and ending dates were available for that year.

| Year | Beginning | Ending |
|------|-----------|--------|
| 1968 | Apr. 16 | Dec. 11 |
| 1969 | Apr. 9 | Dec. 9 |
| 1970 | Apr. 6 | Nov. 21 |
| 1971 | Apr. 12 | Nov. 18 |
| 1972 | Apr. 20 | Dec. 1 |
| 1973 | Mar. 26 | Dec. 7 |
| 1974 | Apr. 1 | Nov. 15 |

During 1967 through 1970, Clairmont did not keep records showing the actual number of hours each piece of equipment was used. However, beginning in 1973, the actual hours of use for each machine were recorded by Clairmont and these records indicate that in that year, the heavy equipment was used approximately 99 percent of their total yearly hours during the peak 7-month construction season.

At the beginning of each construction season, small amounts of equipment were transported to the proper jobsite for necessary preliminary work. This preliminary work was often interrupted by inclement weather lasting an average of 2 or 3 weeks each spring. The remainder of the equipment was committed to the project usually during the last 2 weeks of April. Clairmont's work would continue during the summer and fall months until approximately the first 2 weeks in November, at which time the various projects would begin to be shut down. The bulk of Clairmont's machinery would then be removed from the construction areas and returned to Bismarck, N. Dak., for reconditioning and general maintenance work. When the maintenance work was completed, the equipment was stored in an open area in Bismarck until the next construction season began. Clairmont had no buildings in which to store its equipment and the equipment was subjected to the harsh North Dakota winter from sometime in November or December until April.

Clairmont filed small business corporation returns for 1967 through 1970, using the cash receipts and disbursements, calendar year method of accounting. In computing depreciation for each taxable year, Clairmont used a separate item account system, listing the individual assets and showing their cost, useful life, and the depreciation method used for each.

Two depreciation formulae were used depending upon the particular asset—the declining balance method and the sum of the years-digits method, with one modification. In the year an

asset was purchased, Clairmont used a 7-month year to calculate the partial year's depreciation instead of the usual 12-month year. The effect of the method of proration adopted by Clairmont can be contrasted with the 12-month method as follows:

| Month asset placed in service | 7-month method | 12-month method |
|---|---|---|
| January | 7/7 —100.00% | 12/12 —100.00% |
| February | 7/7 —100.00% | 11/12 — 91.66% |
| March | 7/7 —100.00% | 10/12 — 83.33% |
| April | 7/7 —100.00% | 9/12 — 75.00% |
| May | 7/7 —100.00% | 8/12 — 66.66% |
| June | 6/7 — 85.71% | 7/12 — 58.33% |
| July | 5/7 — 71.42% | 6/12 — 50.00% |
| August | 4/7 — 57.14% | 5/12 — 41.67% |
| September | 3/7 — 42.85% | 4/12 — 33.33% |
| October | 2/7 — 28.57% | 3/12 — 25.00% |
| November | 1/7 — 14.28% | 2/12 — 16.67% |
| December | 0 — 0 | 1/12 — 8.33% |

In using this method, Clairmont would first apply the declining balance or sum of the years-digits method to the asset in order to compute depreciation for 1 full year. Then, depending on the month the asset was purchased, the fraction, based on the 7-month construction year, would be applied to determine the partial year's allowance for that particular asset. Using this approach, any asset purchased and placed in service prior to June of the taxable year would be allowed a full year's depreciation. After the asset had been held beyond the close of the year in which it was purchased, the 7-month formula had no effect on the computation of the depreciation deduction.

Although the majority of Clairmont's work was carried on from late spring through early fall, some construction jobs were usually in progress during the winter months. These projects usually involved paving, laying concrete foundations, and plumbing. The principal reason for this activity was to provide work for key salaried employees so they would not leave the company during the winter months. Clairmont's heavy equipment was not used on the winter construction jobs, but smaller equipment such as automobiles, trucks, and small aircraft were used. Although this equipment was used during the entire year, Clairmont applied the 7-month proration method in calculating its yearly depreciation.

In June 1968, Clairmont acquired heavy equipment which it leased to an Arizona corporation. This equipment was at all times located in Arizona. Clairmont applied the 7-month proration technique to these assets even though the Arizona climate did not limit their use during winter months.

Clairmont's only deviation from a 12-month accounting method was the 7-month depreciation proration technique described above. As Clairmont's sole shareholder, petitioner reported its taxable income for 1967 through 1970 pursuant to section 1373. Respondent recomputed the allowable depreciation for the relevant years as follows:

|  | 1967 | 1968 | 1969 | 1970 |
|---|---|---|---|---|
| Deducted by Clairmont___ | $294,634.28 | $515,125.44 | $490,935.13 | $690,199.00 |
| Allowed by respondent __ | 214,729.19 | 462,606.58 | 497,255.25 | 623,099.90 |
| Allowance in dispute _____ | 79,905.89 | 52,518.86 | (6,320.12) | 67,099.10 |

OPINION

Section 167(a) permits the deduction of a "reasonable allowance" for the exhaustion, wear and tear, and obsolescence of property used in a trade or business or property held for the production of income. Section 167(b) provides that the term "reasonable allowance" shall include an allowance computed under the straight line, declining balance, or the sum of the years-digits methods, or with some technical limitations not here relevant, "any other consistent method" productive of a reasonable annual allowance.[3]

---

[3] SEC. 167. DEPRECIATION.

(a) GENERAL RULE.—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

 (1) of property used in the trade or business, or

 (2) of property held for the production of income.

(b) USE OF CERTAIN METHODS AND RATES.—For taxable years ending after December 31, 1953, the term "reasonable allowance" as used in subsection (a) shall include (but shall not be limited to) an allowance computed in accordance with regulations, prescribed by the Secretary or his delegate, under any of the following methods:

 (1) the straight line method,

 (2) the declining balance method, using a rate not exceeding twice the rate which would have been used had the annual allowance been computed under the method described in paragraph (1),

 (3) the sum of the years-digits method, and

 (4) any other consistent method productive of an annual allowance which, when added to all allowances for the period commencing with the taxpayer's use of the property and

The parties agree that the declining balance and sum of the years-digits methods employed by Clairmont are permissible in its business. They further agree that Clairmont used the correct basis and useful life for each asset in dispute. The only issue is whether Clairmont correctly computed the first-year depreciation on equipment acquired during the several years in controversy.

In making its computations, Clairmont calculated depreciation for a full calendar year, using either the declining balance or sum of the years-digits method. Clairmont then calculated the amount of the depreciation allowable for the first year by applying a fraction whose denominator was 7, the number of months treated as falling within the construction season, and whose numerator was the number of months the equipment was used between May and November of that year. Thus, the depreciation claimed on all assets acquired during the first 5 months of the year was equal to the full amount of the declining balance method depreciation for an entire calendar year. For equipment acquired during any of the succeeding 5 months, as reflected in the second table in our Findings, the amount claimed was larger than it would have been if the fraction had been keyed to the number of months in the calendar year.

We hold that Clairmont's first-year depreciation computations are erroneous.

Clairmont's calculations of first-year depreciation are based on the fundamental premise that its equipment depreciates only during the 7-month construction season. Petitioner's evidence falls short of showing that this is true. The first table in our Findings shows that Clairmont's construction season was not always 7 months—that it ranged from 7 to 8½ months. While there was testimony that depreciation and obsolescence during the off-season months are negligible, we are not satisfied that this general testimony is sufficient. For example, petitioner did not show that the useful life estimates for any of Clairmont's equipment were longer than would ordinarily be used in more

including the taxable year, does not, during the first two-thirds of the useful life of the property, exceed the total of such allowances which would have been used had such allowances been computed under the method described in paragraph (2).

Nothing in this subsection shall be construed to limit or reduce an allowance otherwise allowable under subsection (a).

temperate climates with a 12-month construction season.[4]Indeed, the Forke Brothers Blue Books, on which petitioner relies to show the overall reasonableness of Clairmont's approach, emphasize the "dates of factory delivery," thus indicating that actual use is not the only factor to be considered. Moreover, Clairmont has no records in its individual asset account system showing the actual months of use for individual items, and the evidence shows that the use of numerous items—automobiles, airplanes, trucks, and the Arizona equipment—covered the entire calendar year. Petitioner's factual premise, therefore, has not been established.

Moreover, Clairmont's 7-month technique is inconsistent with section 1.167(a)-(10)(b), Income Tax Regs., which is as follows:

> The period for depreciation of an asset shall begin when the asset is placed in service and shall end when the asset is retired from service. A proportionate part of one year's depreciation is allowable for that part of the first and last year during which the asset was in service. * * *

As a general rule, an asset is "placed in service" for depreciation purposes when it is acquired and available for use. *Kittredge v. Commissioner*, 88 F.2d 632, 634 (2d Cir. 1937); *Yellow Cab Co. of Pittsburgh v. Driscoll*, 24 F.Supp. 993, 995 (W.D. Pa. 1938). Quite obviously, the reference to "one year's depreciation" in this regulation was intended to mean "one taxable year's depreciation." About 49 of approximately 476 individual assets in question were acquired in January, February, or March of the years in issue, and others were acquired in April and May of those years. Instead of claiming only a "proportionate part" of the first year's depreciation, as the regulation contemplates, Clairmont's technique would allow it a full year's depreciation for those assets. The use of the denominator 7 in the fraction for computing depreciation or other first-year assets also results in a greater allowance for those assets than a "proportionate part of one year's depreciation." The effect of Clairmont's technique is to shorten the agreed useful life of many of these assets and

---

[4] Nothing in the record indicates that Clairmont's equipment suffered any more depreciation during its 7-month season than would be incurred by similar assets used for 7 months in a more temperate climate. The logical extension of Clairmont's method would be to prolong the useful lives of its assets beyond their normally assigned ranges, since, during the 12-month calendar year, the assets would have depreciated during only 7 months. Thus, an additional 5 months of unused depreciation would result each year, thereby extending the utility of the individual assets beyond their normal 12-months-a-year useful lives.

thereby to distort the depreciation allowance by increasing it for the first year of the equipment's use and decreasing it in the final year of its use.[5]

Finally, Clairmont's calculations are not consistent with section 1.167(b)-2(a), Income Tax Regs., defining the declining balance method which, in pertinent part, is as follows:

Under the declining balance method a uniform rate is applied each year to the unrecovered cost or other basis of the property. * * * While salvage is not taken into account in determining the annual allowances under this method, in no event shall an asset (or an account) be depreciated below a reasonable salvage value.

The references in this regulation to "each year" and to the "annual allowances" are clearly intended to apply to the taxable year, which, in Clairmont's case, was 12 months during the years in issue. The regulation thus contemplates allocation of the deduction over a 12-month period. Since depreciation is to be computed by applying a "uniform rate," the regulation contemplates an allowance which is unrelated to the portion of the year during which an asset is actually used.

Similarly, Clairmont's 7-month fraction technique is inconsistent with section 1.167(b)-3(a)(1), Income Tax Regs., defining the sum of the years-digits method of computing depreciation, which is in pertinent part, as follows:

Under the sum of the years-digits method annual allowances for depreciation are computed by applying changing fractions to the cost or other basis of the property reduced by estimated salvage. The numerator of the fraction changes each year to a number which corresponds to the remaining useful life of the asset (including the year for which the allowance is being computed), and the denominator which remains constant is the sum of all the years-digits corresponding to the estimated useful life of the asset.

Here, again, the terms "annual allowances" and "each year" refer to taxable years which ordinarily contain 12 months.

Both the declining balance and sum of the years-digits methods are designed to accelerate depreciation—to allow larger deductions for depreciation in the early years of an asset's useful life and smaller deductions in the later years. The regulations

---

[5] Thus, by using $\frac{7}{7}$ as the fraction for computing depreciation on all equipment acquired during the months of January through May of each year, Clairmont claims a full year's depreciation for the first year instead of a proportionate part thereof. Similarly, as shown in the first table in our Findings, larger fractions of a full year's depreciation in the year of acquisition would be allowable for all months of that year except in respect of equipment acquired in November and December. Consequently, proportionately smaller amounts of each asset's basis would remain for deduction in the later years of its use.

relating to the application of the two formulae are tightly drawn. Clairmont's computations would further accelerate first-year depreciation by disregarding the months of the taxable year when Clairmont claims the equipment was not in use. We do not think the "uniform rate," contemplated by the declining balance method, and the "changing fractions" in the sum of the years-digits method, designed to produce an allowance on an annual basis, can be combined with a method which is keyed to the asset's actual use. The two concepts are basically inconsistent and, for the reasons stated, distort the first-year deduction.

*Decision will be entered for the respondent.*